**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>RETIREMENT VALUE LLC,<br><br>*Defendant*. | :<br>:<br>:<br>:<br>:  C.A. No. 3:21-cv-20438<br>:<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, The Lincoln National Life Insurance Company ("Lincoln National"), by and through its undersigned counsel, hereby files and asserts this Complaint against Defendant, Retirement Value LLC, and alleges as follows:

**PARTIES**

1. Lincoln National is a life insurance company incorporated under the laws of the State of Indiana, with its principal place of business located at an address in Radnor, Pennsylvania. Lincoln National is a citizen of the State of Indiana and the Commonwealth of Pennsylvania for purposes of diversity jurisdiction.

2. Retirement Value LLC is a Limited Liability Company organized and existing under the laws of the State of Texas, with its principal place of business at an address located in the State of Texas. Upon information and belief, none of Retirement Value's members are citizens of the State of Indiana or the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction under 28 U.S.C. §1332 because there is complete diversity of citizenship between plaintiff, Lincoln National, a citizen of Indiana and

- 2 -

Pennsylvania, and defendant, Retirement Value, a citizen of a state(s) other than Indiana and Pennsylvania because none of its members, upon information and belief, are citizens of Indiana or Pennsylvania, and there is an actual and ripe controversy between the parties.

4. Venue is proper in this judicial district under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred in the District of New Jersey.

## FACTUAL BACKGROUND

### A. Stranger-Originated Life Insurance

5. A secondary market for life insurance has emerged, in which existing life insurance policies are purchased by third-parties who have no family relationship or other affiliation with the insured. This type of sale, which is sometimes referred to as a "life settlement" can, in limited circumstances, be lawful, provided that the policy was procured for legitimate purposes and that there was an insurable interest at the inception of the policy.

6. However, such a lawful life settlement is markedly different from an illegal human life wager where persons and/or entities with no relationship with the insured procure a policy on the insured's life. Such arrangements are commonly known as stranger-originated life insurance ("STOLI") transactions. While there are many variations, all STOLI schemes have one objective in common: to give investors with no insurable interest in the life of the insured a financial stake in a life insurance policy on the life of a stranger.

7. For over 100 years, the United States Supreme Court and most states (including New Jersey, whose law controls here) have condemned "wagering policies" as violating public policy because they create a "sinister counter interest" in the early demise of insureds. *Grigsby v. Russell,* 222 U.S. 149 (1911); *Warnock v. Davis,* 104 U.S. 775 (1881); *Trenton Mut. Life & Fire Ins. Co. v. Johnson*, 24 N.J.L. 576 (Sup. Ct. 1854).

8. Under New Jersey law, a STOLI policy runs afoul of constitutional, statutory, and common law prohibitions against wagering contracts, as well as New Jersey's insurable interest requirement. Specifically, New Jersey's Constitution has prohibited wagering transactions since 1844. *See Nemtin v. Zarin,* 577 F. Supp. 1135, 1137-41 (3d Cir. 1995) (outlining evolution of New Jersey law). The present New Jersey Constitution, adopted in 1947, prohibits "gambling of any kind" unless authorized by a majority of voters at a special election. N.J. Const., Art. IV, Sec. VII, par. 2. Moreover, in 1951, the New Jersey Legislature also enacted statutes defining what constitutes a wagering or a "gaming transaction" and confirmed that such transactions are illegal. *See* N.J. Stat. Ann. § 2A:40-1 (declaring "gaming transactions" defined to include any "wagers . . . upon any lot, chance, casualty or unknown or contingent event" to "be unlawful"); § 2A:40-3 (declaring "gaming transactions" in violation of N.J. Stat. Ann. § 2A:40-1 to be "utterly void and of no effect"). New Jersey's public policy against wagering transactions is also furthered by its insurable interest law. *See* N.J. Stat. Ann. § 17B:24-1.1a.

9. Although STOLI transactions are often structured in a manner to give the false appearance that a policy is supported by an insurable interest—for example, by having the policy owned by an insurance trust in an insured's name with a family member initially named as a beneficiary—courts applying New Jersey law look beyond the mere form of the transaction and scrutinize the substance of the transaction to determine whether a policy is an illegal STOLI transaction.

10. In *Sun Life Assur. Co. of Can. v. Wells Fargo, N.A. ("Bergman")*, 238 N.J. 157 (2019), the New Jersey Supreme Court held that "STOLI policies are against public policy and are void *ab initio*, that, is from the beginning." In this regard, the Supreme Court in *Bergman* held, among other things, that "a life insurance policy procured with the intent to benefit persons without

- 3 -

an insurable interest in the life of the insured does violate the public policy of New Jersey, and such a policy is void at the outset."  As the New Jersey Supreme Court explained, (i) "STOLIs commonly involve life insurance policies procured and financed by investors—strangers—who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy"; (ii) "[g]enerally, an investor funds a STOLI policy from the outset, which makes it possible to obtain a policy with a high face value"; (iii) in a STOLI arrangement, "[i]t is also common for an insured to buy the policy in the name of a trust and name a 'spouse or other loved one as the trust beneficiary'"; and (iv) "[i]f a third party without an insurable interest procures or causes an insurance policy to be procured in a way that feigns compliance with the insurable interest requirement, the policy is a cover for a wager on the life of another and violates New Jersey's public policy."

### B. The Application for a $5 Million and a $3 Million Life Insurance Policy

11. In or around May 2007, Jefferson Pilot Life Insurance Company ("Jefferson Pilot") (a predecessor entity of Lincoln National) received an application for two life insurance policies (the "Application") insuring the life of Haya Majerovic.  A copy of the Application (with appropriate redactions) is attached as Exhibit "A."

12. The Application initially sought an $8 million life insurance policy (which was later divided into one $5 million policy and one $3 million policy), naming the Haya Majerovic Family Trust, dated February 1, 2007, (the "Trust") as the "owner" and "beneficiary" of the two policies, with Moshe Majerovic, Aaron Gottheil, and Moshe Lebowitz as the trustees of the Trust.  The Application identified the Trust as a New Jersey trust with a Lakewood, New Jersey address.

13. The Application was signed on May 1, 2007, in Lakewood, New Jersey by Ms. Majerovic, the Trust, and the agent, Gitel Halpert.

14. The Application represented that the Trust would pay the premiums for the policy.

15. The Application represented that Ms. Majerovic's "Annual Earned Income" was $0, that her "Annual Unearned Income" was $240,000, and that she had a "Net Worth" of $13 Million.

16. The Application represented that neither Ms. Majerovic nor the Trust had "been involved in any discussion about the possible sale or assignment of this certificate to a life settlement, viatical or other secondary market provider." The Application also represented that neither Ms. Majerovic nor the Trust, in the past two years, "sold a policy or certificate to a life settlement, viatical or other secondary market provider."

17. That same day, Ms. Halpert and the Trust, executed an Out-of-State Sale Verification Form (the "Form"). According to the Form, the Trust confirmed that its state of residence was New Jersey and that the Application was executed in New Jersey.

18. In connection with the Application, Ms. Majerovic, Ms. Halpert, and the Trust, executed an Insured & Owner Premium Financing Questionnaire (the "Questionnaire") in Lakewood, New Jersey on or about May 5, 2007. According to the Questionnaire, it was only required to be completed if, among other things, the insured "intends to borrow any portion of the initial or future premiums on a life insurance policy from any third party."

19. By signing the Questionnaire, Ms. Majerovic and the Trust represented that (i) they intended to keep the policy for at least five years; (ii) the policy was not the only collateral for the premium finance loan; (iii) they did not receive copies of the loan documents; (iv) they were not offered anything of value to procure the policy; (v) they were not assured that they could fully satisfy the loan by transferring the policy to the lender; (vi) they did not have any discussions about

the eventual sale of the policy; and (vii) Ms. Majerovic did not authorize a life expectancy analysis to be completed within the past two years.

### C.  The Issuance of the Majerovic Policies

20.  In reliance upon the aforementioned representations contained in the Application and other supporting documents and information submitted to Jefferson Pilot in connection with the Application, Jefferson Pilot issued a policy with a $5 million death benefit (policy number JP5581248) and a policy with a $3 million death benefit (policy number JP5575311) (the "Policies") on or about May 25, 2007, insuring the life of Ms. Majerovic with the Trust as owner and beneficiary.

21.  On or about May 29, 2007, the initial premiums under the Policies were paid to Jefferson Pilot via two checks in the amounts of $110,794.03 and $66,532.21.

22.  On or about May 30, 2007, the trustee of the Trust signed a delivery receipt acknowledging and representing that the Policies were delivered to the Trust in Lakewood, New Jersey.

### D.  The Human Life Wager and Materially False Representations

23.  Upon information and belief, the initial premiums paid for the Policy were not funded by the insured or any other person with an insurable interest in Ms. Majerovic's life and, instead, the premiums were funded by persons and/or entities that lacked an insurable interest in Ms. Majerovic's life and were participating in a wager on her life so that they might profit.

24.  Upon information and belief, in furtherance of this human life wager, the Application and other documents (described above) in support of the Application contained materially false information which was intended to induce, and which did induce, Jefferson Pilot to issue the Policies.

25. Upon information and belief, there were materially false representations made regarding, among other things, (i) the lack of any discussions about selling the Policies to a life settlement company and/or investors; (ii) the lack of any financial incentives to procure the Policies; and (iii) that the Trust would be the source of premium payments.

26. Jefferson Pilot relied upon the accuracy of the information provided in the aforementioned Application and supporting documents and never would have issued the Policies had it known the truth.

### E. The Transfers of Policy Ownership/Beneficiaries

27. On March 16, 2010, the Trust changed the owner and beneficiary of the Policies to James Settlement Services, LLC ("James Settlement").

28. On July 27, 2010, James Settlement changed the owner and beneficiary of the Policies to Retirement Value, LLC, which is the current record owner and beneficiary.

29. The insured died in or around 2019.

## COUNT I

## DECLARATORY JUDGMENT—ILLEGAL HUMAN LIFE WAGERING CONTRACTS

30. Lincoln National hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

31. The Policies, which were applied for, issued, and delivered to the Trust in New Jersey, are governed by New Jersey law.

32. As set forth above, New Jersey has constitutional, statutory, and common law prohibitions against human life wagers, and the New Jersey Supreme Court in *Bergman* ruled that STOLI transactions are illegal and void *ab initio* under New Jersey law.

33. Upon information and belief, the Policies were, from the outset, intended as wagers on Ms. Majerovic's life by stranger investors who were hoping to cash in on the Policies by either

selling the Policies for a profit on the investor market or collecting the death benefits upon Ms. Majerovic's death.

34. Upon information and belief, the Policies are illegal human life wagers under New Jersey law because the Policies were taken out with the intent to benefit stranger investors lacking an insurable interest in the insured's life and because stranger investors procured the Policies and funded the initial premiums on the Policies. *See Bergman*, 238 N.J. 157 (New Jersey Supreme Court holding that "a life insurance policy procured with the intent to benefit persons without an insurable interest in the life of the insured does violate the public policy of New Jersey, and such a policy is void at the outset."); *id.* (As the New Jersey Supreme Court explained, (i) "STOLIs commonly involve life insurance policies procured and financed by investors—strangers—who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy"; and (ii) "[g]enerally, an investor funds a STOLI policy from the outset, which makes it possible to obtain a policy with a high face value").

35. Accordingly, Lincoln National seeks, and is entitled to, a declaratory judgment declaring that the Policies are illegal and void *ab initio* human life wagers under New Jersey law.

## COUNT II

### DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

36. Lincoln National hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

37. Upon information and belief, although the transaction was structured to attempt to feign technical compliance with New Jersey's insurable interest statute, N.J. Stat. Ann. § 17B:24-1.1a, by establishing the Trust in the insured's name as the initial owner of the Policies, the Policies lack an insurable interest and are void *ab initio* because the Policies were taken out with the intent

to benefit stranger investors lacking an insurable interest in the insured's life and stranger investors procured the Policies and funded the initial premiums on the Policies. *See Bergman*, 238 N.J. 157 (New Jersey Supreme Court holding that "a life insurance policy procured with the intent to benefit persons without an insurable interest in the life of the insured does violate the public policy of New Jersey, and such a policy is void at the outset."); *id.* (As the New Jersey Supreme Court explained, (i) "STOLIs commonly involve life insurance policies procured and financed by investors—strangers—who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy"; (ii) "[g]enerally, an investor funds a STOLI policy from the outset, which makes it possible to obtain a policy with a high face value"; (iii) in a STOLI arrangement, "[i]t is also common for an insured to buy the policy in the name of a trust and name a 'spouse or other loved one as the trust beneficiary'"; and (iv) "[i]f a third party without an insurable interest procures or causes to an insurance policy to be procured in a way that feigns compliance with the insurable interest requirement, the policy is a cover for a wager on the life of another and violates New Jersey's public policy.").

38. Accordingly, Lincoln National seeks, and is entitled to, a declaratory judgment declaring that the Policies lack an insurable interest and are void *ab initio* under New Jersey law.

## PRAYER FOR RELIEF

WHEREFORE, Lincoln National respectfully requests the entry of an Order by this Court as follows:

A. Declaring that the Policies are void *ab initio*;

B. Declaring that because the Policies are void *ab initio,* the Court will leave the parties to these illegal contracts as it finds them, thus permitting Lincoln National to retain the

premiums paid on the Policies or, in the alternative, declaring that Lincoln National may retain some or all of the premiums paid on the Policies;

    C.    Awarding Lincoln National attorneys' fees and costs associated with seeking this judgment, as determined by the Court; and

    D.    Awarding Lincoln National such further relief as this Court deems appropriate.

Dated: December 9, 2021

COZEN O'CONNOR, P.C.

*/s/ Philip J. Farinella*
Philip J. Farinella, Esq. (239742017)
Michael J. Miller, Esq. (032821991)
Joseph M. Kelleher, Esq. (040602009)
1010 Kings Highway South
Cherry Hill, NJ 08034
pfarinella@cozen.com
mjmiller@cozen.com

*Attorneys for Plaintiff The Lincoln National Life Insurance Company*